IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                             ) Civil Actions No. 02-1201,
                                   ) 03-425, 03-1380, 05-589,
COMMUNITY BANK OF NORTHERN         ) 05-590, 05-688, 05-1386
VIRGINIA AND GUARANTY BANK         )        and 06-768
SECOND MORTGAGE LITIGATION         )

MEMORANDUM

Gary L. Lancaster,
District Judge.                                October 6, 2006

This matter is before the court on remand following the

decision of the Court of Appeals for the Third Circuit that

reversed this court's settlement order. In Re Community Bank of

Northern Virginia, 418 F.3d 277 (3d Cir. 2005). The court of

appeals held that this court did not adhere to the requirements

of Federal Rule of Civil Procedure 23 in certifying a class

and/or in approving the settlement.

Among other things, the appellants, who are called "the

Objectors," persuaded the court of appeals that the settlement

may not be fair and the representation inadequate because class

members may have "viable" claims under the Truth in Lending Act

("TILA"), as amended by the Home Ownership and Equity Protection

Act ("HOEPA"), 15 U.S.C. § 1601 et seq. The Objectors argued

that these claims were not pled by the named plaintiffs and were

not adequately compensated for in the proposed settlement.

The court of appeals directed that this court "should pay particular attention to the prevalence of "colorable" TILA [and] HOEPA...claims that the individual class members may have which were not asserted by class counsel in the consolidated complaint..."  Id. at 310.  This memorandum addresses that narrow aspect of the mandate from the court of appeals.

I.   PROCEDURAL BACKGROUND

On November 4, 2005, the court held a status conference to discuss proceedings on remand.  At the conclusion of the status conference, the court determined, pursuant to the court of appeals's decision, that the threshold matter to be addressed was whether any class members had a "viable" claim under TILA as amended by HOEPA, 15 U.S.C. § 1601 et seq.  The court ordered the parties to form a steering committee and agree to a briefing schedule.  The parties did so and, on December 14, 2005, the court entered a scheduling order which provided dates for initial briefs, responses and replies limited to the issue of the "viability" of absent class members TILA/HOEPA claims.  The parties filed extensive briefs.

On July 18, 2006, the court heard oral argument in this matter.  The court has considered all relevant arguments of each interested party and is prepared to rule.  For the reasons set forth below, the court finds that the proposed TILA/HOEPA claims

2

for damages are not viable, because no named class representative, no member of the class, no Objector, nor any individual who opted out had a timely TILA/HOEPA claim for damages as of the date of the relevant complaint. The court finds that the proposed TILA/HOEPA claims for rescission are not viable, because the right of rescission is subject to a statute of repose. Accordingly, three years after a loan closed, the right of an individual debtor to rescind the loan expired. This right cannot be revived by equitable tolling, relation back, or any of the theories advanced by the Objectors. Thus, no claim for rescission is viable.

## II.   FACTUAL BACKGROUND

The facts regarding the predatory lending scheme allegedly perpetrated by the Shumway organization by associating itself with Community Bank of Northern Virginia ("CBNV") and Guaranty National Bank of Tallahassee ("GNBT"), and from which the GMAC Residential Funding Corporation ("RFC") allegedly profited, are succinctly set forth in the court of appeals's opinion and will not be repeated here. 418 F.3d at 283-284. A brief review of the filing dates relevant to this decision, however, is in order.

For the purpose of clarity, we will refer to the various parties in the same manner as the court of appeals. Specifically, the individuals represented by the law firms Carlson & Lynch, Lawson, Fields & Calhoun and Richardson, Patrick, Westbrook & Brickman  will be referred to as the "Class Plaintiffs."   The individuals represented by the law firms Walters Bender Stroebhen & Vaughn, the Law Offices of Franklin R. Nix, The Sharborough Law Firm and the Legg Law Firm will be referred to as "the Objectors."   Defendants CBNV, Irwin Union Bank and Trust, GBNT, the Federal Deposit Insurance Corporation and the GMAC Residential Funding Corporation will be referred to collectively as "defendants."   Below is a chronology of the complaints filed in this matter by the Class Plaintiffs and the Objectors.

A.   Class Plaintiffs' Complaints

On May 1, 2001, plaintiff Ruth Davis filed the first complaint against CBNV and RFC.   Plaintiff Davis filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania, asserting a number of Pennsylvania state law claims on behalf of a putative class of borrowers whose loans were secured by property located in the Commonwealth of Pennsylvania against CBNV and RFC.   Ms. Davis's loan closed on February 22, 1999.   On July 27, 2001, CBNV and RFC filed a notice of removal on the basis of

4

plaintiff Davis's assertion that RFC was subject to assignee liability under HOEPA.    On April 25, 2002, this court, after review of the report and recommendation of a Magistrate Judge, remanded the Davis matter to state court.    This court held that assertion of HOEPA assignee liability was insufficient to confer federal question jurisdiction.

On June 12, 2002, plaintiff Davis again amended her complaint, and asserted federal claims against defendants CBNV and RFC.    Plaintiff Davis also expanded the definition of the putative class, and sought to represent a nationwide class of CBNV borrowers.    Specifically, plaintiff Davis asserted claims pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.    Plaintiff Davis alleged that defendants, by failing to properly disclose material terms of the loans, violated RESPA in a number of ways.    Plaintiff Davis did not, however, assert any claims on the basis of TILA/HOEPA.    On July 9, 2002, defendants removed the case to this court at Civil Action No. 02-1201.    Thereafter, on July 25, 2002, plaintiff Davis filed a third amended complaint in this court.

On September 11, 2002, plaintiffs William and Ellen Sabo filed a class action complaint in this court alleging violations of RESPA on behalf of a nationwide class of CBNV

borrowers whose loans were purchased by RFC. The Sabos's loan closed on October 15, 1999.

On September 19, 2002, plaintiffs Russell and Kathleen Ulrich filed suit in this court on behalf of a nationwide class of GBNT borrowers whose loans were assigned to RFC. The Ulrichs's loan closed on August 8, 2000. The Ulrich plaintiffs, like plaintiff Davis, asserted federal claims pursuant only to RESPA. The Ulrich plaintiffs did not assert any claims on the basis that defendants conduct violated TILA/HOEPA.

On October 23, 2002, plaintiffs John & Rebecca Picard filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania against CBNV and RFC. Their loan closed on November 30, 1999. The Picard plaintiffs asserted only state law claims on behalf of a Pennsylvania class of borrowers. On November 6, 2002, another complaint with named plaintiffs Thomas Mathis, whose loan originated with GNBT and closed on June 7, 2001 and Stephen and Amy Haney, whose loan was also originated with GNBT and closed on May 23, 2001, was filed in the Court of Common Pleas of Allegheny County. Defendants removed these actions to this court on November 19, 2002 on the basis that Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86 ("NBA") and Section 521 of the Depository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1831(d) ("DIDA") completely

6

preempted state law claims of this sort. The Picard plaintiffs filed a motion to remand. On February 27, 2003, the Picard plaintiffs amended their complaint, alleging a nationwide class of GNBT and CBNV borrowers, whose loans were not purchased by RFC or any other purchaser on the secondary market. The amended complaint added as parties: (1) Nora Miller, whose CBNV loan closed on April 30, 1999; (2) Robert and Rebecca Clark, whose GNBT loan closed on March 20, 2001 ; and (3) Edward R. Kruska, Jr., whose GNBT loan closed on May 5, 2001. The amended complaint also included a RICO claim.

Finally, on February 26, 2003, plaintiffs Brian and Carla Kessler filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania against CBNV and RFC. Their loan closed on April 30, 1999. The Kessler plaintiffs sought to represent a class of borrowers whose loans were secured by property located in the Commonwealth of Pennsylvania. The Kessler plaintiffs brought claims under Pennsylvania law only. In addition to the Kesslers, named as putative class representatives was Patricia Porco, whose GNBT loan closed on September 9, 2000. Defendants removed the case to this court on the basis that Sections 85 and 86 of the NBA, 12 U.S.C. §§ 85-86 and Section 521 of DIDA, 12 U.S.C. § 1831(d) completely preempted

7

state law claims of this sort.   The plaintiffs did not filed a
motion to remand.

On July 14, 2003, plaintiffs and CBNV, GNBT and RFC
filed a joint motion for preliminary approval of a proposed
nationwide class action settlement. On July 17, 2003, this court
preliminarily approved the settlement and consolidated the above
cases at Civil Action No. 03-425.   This court further ordered
that notice of the proposed settlement be sent to the class.[1]   On
November 10, 2003, the a Consolidated Amended Class Action
complaint, joining all named class plaintiffs, was filed against

_____

[1] On October 3, 2003, several class members who had opted
out of the proposed settlement filed suit in the United States
District Court for the Northern District of Illinois, Spann,
et. al v. Community Bank of Northern Virginia, Civil Action No.
1:03-7022 (N.D. Ill.), seeking, inter alia, damages and
rescission under TILA/HOEPA.   On December 5, 2005, the Judicial
Panel on Multidistrict Litigation transferred the case to this
court for pretrial proceedings. The case file was received by
this court on May 5, 2006.   The Spann plaintiffs, were not
parties to the proposed settlement, nor were they objectors.
Rather, the Spann plaintiffs are pursuing their own action.
Further, prior to the transfer, the Spann plaintiffs raised a
number of issues the Objectors present here and the United
States District Court for the Northern District of Illinois
persuasively held that these arguments were without merit. See
Spann v. Community Bank of No. Virginia, 2004 WL 691785
N.D.Ill. 2004, and discussion infra at page 26-28.     While the
Spann plaintiffs' appeared at oral argument and provided
separate submissions on the issue of the viability of their
TILA/HOEPA claims, their arguments have little relevance to the
question analyzed here, or to the issues remaining in their
case.   Accordingly, RFC's Motion to Strike the Brief of Spann
Objectors, [Doc. # 167] is DENIED as moot.

CBNV, GNBT and RFC.   Following a fairness hearing, this court
approved the settlement on December 4, 2003.

B.   The Objector Complaints

The Objectors filed one class action complaint, and
sought leave to file two other class action complaints asserting,
*inter alia*, TILA/HOEPA claims on behalf of a national class of
borrowers whose loans originated from either CBNV or GNBT and
were acquired by RFC.

In October of 2003, the Objectors sought leave to
intervene in the proceeding consolidated at Civil Action No. 03-
425.  Their motion was denied.  On July 30, 2004, the Objectors
filed a putative class action in the United States District Court
for the Northern District of Alabama.   This action was
transferred to this court by order of the Judicial Panel on
Multi-District Litigation.  Upon the court of appeals' remand of
this matter to this court, the Objectors filed a proposed Second
Amended Complaint, on September 8, 2005.

While the Clerk of Court accepted the Complaint in
Intervention for filing, the motion to intervene was, as noted
above, denied by this court on October 21, 2003.   The court of
appeals reversed this order and directed this court to reexamine
whether the Objectors should be allowed to intervene as a matter
of right under Rule 24(a)(2) or permissively under Rule 24(b)(2).

At the November 4, 2005 conference, this court asked the Objectors' representative, Attorney Michael Vaughn, if the Objectors' still wished to intervene. He stated that they did not. Accordingly, the court has not analyzed any of the issues related to the viability of TILA/HOEPA pursuant to the rules of permissive or compulsory intervention under Rule 24.

The complaint filed in the United States District Court for the Northern District of Alabama named as plaintiffs: (1) Clell Hobson, whose loan originated with CBNV and closed on May 2, 2001 and was assigned to Irwin Union Bank and Trust; and (2) John & Cathy Nixon, whose loan originated with GNBT and closed on February 8, 2001 and was assigned to Irwin Union Bank and Trust. On August 30, 2004, the Objectors filed a first amended complaint which added as named plaintiffs: (1) Rosa Kelly, whose loan originated with GNBT and closed on September 27, 2000; and (2) Jerome & Charetta Roberts, whose loan originated with GNBT and closed on October 13, 2000.

The proposed Second Amended Complaint seeks to add the following individuals as putative class representatives: (1) Melba Brown, whose CBNV loan closed on August 12, 2000; (2) Mr. and Mrs. John Drennen, whose GNBT loan closed on July 28, 2001;[2]

---

[2]     Mr. and Mrs. Drennen, Mr. and Mrs. Starkey and another set of plaintiffs, Mr. and Mrs. Garner, also filed an individual action against CBNV, GNBT and RFC in the United

10

(3) Flora Gaskin, whose CBNV loan closed on August 14, 2001; (4) Mr. and Mrs. Charles E. Kelly, Jr., whose CBNV loan closed on November 12, 1999; (5) Roy Lee & Ruthie Mae Logan, whose GNBT loan closed on July 11, 2001; (6) Brenda Loverman & Daniel Barbaud, whose CBNV loan closed on November 12, 1998; (7) Mr. and Mrs. John Starkey, whose GNBT loan closed on October 31, 2001; and (8) Earl Turner, whose GNBT loan closed on October 10, 2000.[3]

## III. STANDARD OF REVIEW

The Objectors contend that the court of appeals, by using the words "viable" and "colorable" intended that this issue be analyzed under a Motion to Dismiss standard pursuant to Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6). The defendants contend that the court of appeals issued its opinion in the context of whether class certification was appropriate and the settlement fair, reasonable, and adequate. Defendants contend an inquiry should be conducted pursuant to Rule 23. Fed.R.Civ.P. 23.

---

States District Court for the Western District of Missouri on July 25, 2005. That action was conditionally transferred to this court on September 27, 2005, and is pending at Civil Action No. 05-1386.

[3]   The Objectors have also included Roderick & Natasha Alexander, whose GNBT loan closed on March 9, 2002. Mr. and Mrs. Alexander were not proposed representative plaintiffs in the second amended complaint.

It appears that the court of appeals, by using the terms "viable" and "colorable" intended that this court apply a hybrid standard of review. Namely, the court of appeals directed this court to examine whether the Class Plaintiffs were inadequate representatives under Rule 23. The court of appeals questioned whether the Class Plaintiffs were inadequate if they failed to assert TILA/HOEPA claims that were "viable." Thus, it appears that the court of appeals intended this court to examine whether the Class Plaintiffs were inadequate representatives under Rule 23 because they failed to assert TILA/HOEPA claims which could have survived a Rule 12(b)(6) motion to dismiss[4]. On issues of federal law, in cases transferred to this court pursuant to 28 U.S.C. § 1407, only the decisions of the Supreme Court and the Court of Appeals for the Third Circuit are binding. In Re Linerboard Antitrust Litigation, 2005 W.L. 1625040 (E. D. Pa. July 11, 2005)(relying on, inter alia, In Re Korean Air Lines, 829 F.2d 1171 (D.C. Cir. 1987)).

---

[4]     Since the court has analyzed these issues pursuant to a Fed.R.Civ.P. 12(b)(6) standard, matters outside the pleadings have not been considered. Accordingly, GMAC's Motion to Strike Affidavit of Margot Saunders, [Doc. # 178], GMAC's Motion to Strike Affidavit of Michael Morin [Doc. # 179], and GMAC's Motion to Strike [Doc. # 180] are DENIED as moot.

IV.  <u>DISCUSSION</u>

    A.  <u>TILA/HOEPA Claims for Damages</u>

        1.  <u>Statute of Limitations</u>

Defendants' principal argument is that the TILA/HOEPA claims for damages are not viable because they are time barred. It is undisputed that a TILA/HOEPA action for damages has a one-year statute of limitations, 15 U.S.C. § 1640(e).  The period begins to run from the date the loan closed.  A statute of limitations defense is appropriate for evaluation under Fed.R.Civ.P. 12(b)(6) when, as here, the operative facts are on the face of the complaint.  <u>Benak v. Alliance Capitol Mgmt.</u>, 435 F.3d 396, 400 n.14 (3d Cir. 2006).

Because there were multiple complaints, filed in various courts at different times, alleging different causes of action, the initial inquiry is:  were the TILA/HOEPA damage claims viable as of which filing date?  Restated, what is the operable date to determine if these purported TILA/HOEPA damage claims are timely and thus, viable.

We conclude that the court of appeals intended that the court examine whether there were "viable" TILA/HOEPA claims for damages that could have been asserted at the time the Consolidated Amended Class Action Complaint was filed on November

10, 2003.   Thus, that is the operable date for statute of
limitations analysis.

     With respect to the statute of limitations analysis the
court of appeals stated that:

     The age of the named plaintiffs' loans when the
     **relevant complaints** were filed ranged from twenty-
     eight months (in the case of Mathis) to fifty-six
     months (in the case of Davis).  (Emphasis mine)
     418 F.3d at 306-07.

And in a footnote noted:

     The average age of the named parties' loans at the
     time the **relevant complaint** was filed was forty-nine
     and one-half months.  (Emphasis mine).  Id. at 307,
     footnote 23.

The court of appeals  was clearly referring to November 10, 2003
as the "relevant complaint" for statute of limitations analysis.
As noted above, Thomas Mathis's GNBT loan closed on June 7, 2001,
approximately twenty-eight months before November 10, 2003.
Likewise, Ruth Davis's loan, also issued by GNBT, closed on
February 22, 1999, approximately fifty-six months before November
10, 2003.   The court has also calculated the "average age of the
named parties loans" from November 10, 2003, and come to the same
computation as the court of appeals, forty-nine and one half
months.

     We are also persuaded that the November 10, 2003 filing
is the operative filing for the damages statute of limitations

14

analysis by the direct mandate from the court of appeals:

> On remand, the District Court should pay particular
> attention to the prevalence of colorable TILA,
> HOEPA, and other claims that the individual class
> members may have **which were not asserted by class
> counsel in the consolidated complaint** (or presumably
> in settlement negotiations).  (Emphasis mine).

<u>Id</u>. at 309-310.

Thus, a fair reading of the opinion is that the court of appeals intended that the statute of limitations inquiry focus on whether TILA/HOEPA damage claims were timely and thus, viable as of the November 10, 2003 filing date.[5]  The court of appeals was fully aware of the importance of this issue.  Had the court intended the statute of limitations analysis to focus on any of the earlier filed complaints it would have said so.  Finally, given that the ultimate question is the fairness of the settlement, it would seem logical to determine the viability of the TILA/HOEPA claims as of the date of the complaint on which the settlement was ultimately based.

As stated earlier, an action for damages has a one (1) year statute of limitations.  There is no dispute that this time period commences upon the closing of the loan in question.

---

[5] For reasons that are unclear, the Objectors contend that the court of appeals "made it clear that the filing of the <u>Davis v. CBNV</u> matter on May 1, 2001 and the <u>Ulrich v. GNBT</u> matter of September 19, 2002" were the relevant tolling dates and directs the court to pages 304-305 of the opinion.  Objector's Brief, [Doc. #146-1], filed 2/15/06 at page 59.

15 U.S.C. § 1640(e). It is also undisputed that no named plaintiff, member of the plaintiff's class, Objector, or anyone else in this case closed their loan within one year prior to November 2003.[6] Thus, there were no viable TILA/HOEPA claims for damages to assert in the November, 2003 filing. They were all time barred.

### 2. Relation Back Under Rule 15(c)

The Objectors contend that, despite the statute of limitations, the TILA/HOEPA claims for damages can be made viable if this court were to now permit the filing of a Second Amended Consolidated Class Action Complaint to assert the TILA/HOEPA claims for damages. Such an amendment would, the Objectors argue, relate back to a previous timely filed complaint-namely the original Davis complaint under Fed.R.Civ.P. 15(c). As set forth above, however, the court has concluded, based upon the court of appeals' guidance, that the statute of limitations analysis turns on whether any named class plaintiff, Objector or individual who opted out, had a loan that closed within one (1) year of the November 10, 2003, Consolidated Amended Class Action

_____

[6] As the court of appeals noted, on "March 28, 2002, RFC announced that it was no longer willing to purchase high interest mortgage loans like the ones sold by Shumway." 148 F.3d at 284.

16

Complaint, not the <u>Davis</u> complaint. None did; thus, any amendment would, under Fed.R.Civ.P. 15(a), be futile.

The Objectors' argument that now filing a Second Consolidated Amended Class Action Complaint that asserts TILA/HOEPA claims would relate back to the <u>Davis</u> filing date, May 1, 2001, is also imperiled by a second and more fundamental problem: in order to benefit from an earlier filing date the amended complaint would have to meet the requirements of both Rule 15(c)(2) and (c)(3). <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 222 (3d Cir. 2003). First, the proposed TILA/HOEPA claims must arise out of the conduct, transaction, or occurrences set forth or attempted to be set forth in the <u>Davis</u> pleading. Fed.R.C.P. 15(c)(2). Assuming, without deciding, that the Objectors could satisfy Rule 15(c)(2), which is by no means certain, their argument clearly fails under Rule 15(c)(3).

Where an amended complaint changes the party or adds an additional party against whom a claim is asserted, Rule 15(c)(3) provides, in substance, that the relation back principle is applicable only if ... "but for a mistake concerning the identity of the proper party, the action would have been against the party." Thus, the plain language of Rule 15(c)(3) indicates that in order for an amendment changing parties or adding parties to relate back to the date of the original pleading, there must have

17

been a mistake concerning the identity of the proper party. A mistake concerning the identity of the proper party can include a mistake by a plaintiff of either law or fact so long as the plaintiff's mistake resulted in a failure to assert a claim against the proper defendant. <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1995).[7]

In summary, the relation back principle set forth in Rule 15(c)(3) is not a panacea. A plaintiff cannot revive a time barred claim by the simple artifice of filing an amended complaint. Indeed, as the court of appeals observed in <u>Nelson</u>,

> although the relation-back rule ameliorates the effect of statutes of limitations, in the absence of a mistake, otherwise time-barred plaintiffs cannot take advantage of the rule to perform an end-run around the statute of limitations that bars their claims.

<u>Nelson</u>, 60 F.3d at 1015. Rather, it is limited in its scope and intent. Its scope is confined to those instances in which the proper party was mistakenly not named as the defendant in the

---

[7] The court of appeals noted in a footnote that

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier than that of amendments changing defendants. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs. <u>Nelson</u>, 60 F.3d at 1014, footnote 7.

original complaint; Rule 15(c)(3) then allows the plaintiff to amend the pleading to change or to add the mistakenly omitted proper party, so long as the omitted proper party had received adequate notices required by the rule. <u>Singletary v. Dep't of Corrections</u>, 266 F.3d 186, 194 (3d Cir. 2001). The intent of Rule 15(c)(3) is to avoid the harsh result of foreclosing a case on the merits, due to an inadvertent and harmless mistake in not naming the proper parties.

Rule 15(c)(3) cannot save these TILA/HOEPA claims. By illustration, the defendants in the <u>Davis</u> complaint are CBNV, RFC, and Sovereign Bank. The amended complaint proposed by the Objectors [Exhibit 1 to Doc. #109 in Civil Action 05-688] include the original defendants in the <u>Davis</u> case, but also, a number of other defendants. Thus, to have the proposed amended complaint relate back to the <u>Davis</u> complaint the Objectors would have to establish that Ms. Davis's failure to name the proposed additional defendants in the original complaint resulted from some mistake concerning their identity [8].

Ms. Davis's failure to name any other defendants in the original complaint, however, was not due to any mistake as to who

---

[8]    In the proposed Second Amended Complaint, the Objectors averred that they did not name GNBT because, on March 12, 2004, the Office Of the Comptroller of Currency closed GNBT and appointed the FDIC as receiver. Civil Action No. 05-688, Doc. # 109, Exhibit 1 at ¶ 11.

the proper parties were. On the contrary, the proper parties, as to her, were named. There was no mistake in failing to name GNBT, or any other entity, as a defendant, they simply had nothing to do with her cause of action.

Indeed, any attempt to resurrect the time barred TILA/HOEPA claim by a Rule 15(c)(3) relation back theory linked to any of the complaints filed prior to the November 10, 2003 consolidated complaint will have the same road block because, as recognized by the court of appeals, the first complaint in which all of the proper parties--plaintiffs and defendants--who are involved in this complex litigation are contained in one complaint is the November 10, 2003 consolidated amended complaint itself.⁹ It is possible that filing a second consolidated amended complaint may relate back to the November 10, 2003 complaint but for the reasons stated above, the TILA/HOEPA damage claims were already time barred. Thus any complaint filed would be futile.

Nor are we persuaded by the Objectors' contention that the Hobson complaint, which alleges TILA/HOEPA damage claims filed in July of 2004 in the United States District Court for the

---

⁹ As the court of appeals recognized, it was uncertain that this court even had subject matter jurisdiction over this entire dispute prior to the filing of the Consolidated Amended Class Action Complaint. 418 F.3d at 298, footnote 12.

Northern District of Alabama can relate back to the original Davis complaint. There are a number of distinct, and dispositive, reasons this argument fails. The most basic reason is that the relation back principle under Rule 15(c) is available only to a party amending its own original complaint. Rule 15(a) provides that "a party may amend under Rule 15(a) the party's pleading once as a matter of right...[o]therwise a party may amend the party's pleading by leave of court..." Fed.R.Civ.P. 15(a).

The Hobson plaintiffs are not parties to the Davis complaint, or to any other complaint filed in this case--they are the opt-outs. They chose to pursue a separate lawsuit and, in an unpublished opinion, the Court of Appeals for the Third Circuit- -as has every other court of appeals that has addressed the issue--held that "Rule 15(c) does not permit a complaint filed in one civil action to relate back to a complaint filed in a separate civil action." U.S. ex rel. Mallory v. Telephonics Corp., 68 Fed.Appx. 270, 273 (3d Cir. 2003). See also Carter v. Texas Dept. of Health, 119 Fed.Appx. 577 (5th Cir. 2004); Coleman v. Pacific Gas and Elec. Co., 79 F.3d 1152 (9th Cir. 1996); Bailey v. Northern Indiana Public Service Co., 910 F.2d 406 (7th Cir. 1990).

21

### 3. Equitable Tolling

The Objectors also argue that equitable tolling is available to salvage the otherwise untimely TILA/HOEPA damage claims. The Objectors correctly note that the court of appeals stated that the claims asserted by the Objectors could be subject to equitable tolling. In Re Community Bank of No. Virginia, 418 F.3d at 305. The Objectors contend that this court should equitably toll these claims for damages because the defendants' scheme, by its very nature, constituted fraudulent concealment of the facts that would have led the putative class members to discover the TILA/HOEPA claims.

Defendants contend that the failure to disclose the allegedly wrongful conduct cannot, as a matter of law, constitute an affirmative act of fraudulent concealment necessary to invoke the equitable tolling doctrine. Defendants further contend that, pursuant to Fed.R.Civ.P. 9, fraud must be pled with particularity. The court agrees.

Equitable tolling, if applicable, will "stop the statue of limitations from running where the claim's accrual date has already passed." Weis-Buy Services v. Paglia, 411 F.3d 415, 424 (3d Cir. 2005). To benefit from the equitable tolling doctrine on a theory of fraudulent concealment, the Objectors have the burden of proving three necessary elements: (1) the defendant has

22

actively misled the plaintiff respecting the plaintiff's cause of
action;  (2) which prevented the plaintiff from recognizing the
validity of his claim within the limitations period; and (3)
where the plaintiff's ignorance is not attributable to his lack
of reasonable due diligence in attempting to uncover the relevant
facts.  Cetel v. Kirwan Financial Group, Inc., - F.3d -, 2006 WL
2466855 (3d Cir. August 28, 2006).  Equitable tolling "is an
extraordinary remedy which should be extended only sparingly."
Hedges v. U.S., 404 F.3d 744, 751 (3d Cir. 2005).

        Although  equitable  tolling  can,  in  appropriate
circumstances, toll the statute of limitations for TILA/HOEPA
claims for damages, Ramadan v. Chase Manhattan Corp., 156 F.3d
499, 505 (3d Cir. 1998), more is required than what the Objectors
have presented here.   Restated, the fraudulent act(s) that
provide the factual predicate for the claim, i.e. inaccurate loan
documents, cannot also satisfy the factual predicate justifying
equitable tolling.   To so hold would render the statute of
limitations meaningless for fraud by its nature requires a deceit
thus, to state a case for fraud would always suffice to state a
case for fraudulent concealment. Rather, the Objectors must show
the defendants took some active steps to mislead the borrowers
with the result the borrowers were lulled into sitting on their
right of redress.  Oshiver v. Levin, Fishbein, Sedran & Berman,

23

38 F.3d 1380, 1391, footnote 10 (3d Cir. 1994). Restated, fraudulent concealment requires some additional affirmative fraudulent act to perpetuate the concealment. Mere inaction or silence is not sufficient. Davenport v. A. C. Davenport & Gas Co., 903 F.2d 1139, 1142 (7th Cir. 1990); Volk v. D. A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987); Roney and Co. V. Kassab, 981 F.2d 894 (6th Cir. 1992).

In the present matter, there is no suggestion that any of the defendants actively misled any member of the class and thereby prevented the class member from recognizing the validity of his claim within the statutory time period. Further, there is no suggestion that a class member asserted his rights in the wrong forum. Finally, there is strong evidence that equitable tolling should not apply because the class members' did not exercise due diligence. The representations that the Objectors contend were inaccurate, thus creating a TILA/HOEPA violation, were contained in the class members' own loan documents. The Objectors only contention to support the application of equitable tolling is that defendants did not tell them the representations contained in the loan document were inaccurate. This is insufficient to justify the application of equitable tolling to save the otherwise time barred damage claims.

4.  American Pipe Class Action Tolling

The Objectors final argument is that class action tolling, or American Pipe tolling, salvages their damage claims. At oral argument in this matter, the Objectors appeared to withdraw their argument related to American Pipe tolling, on the basis that class certification has not been denied and, thus, American Pipe is inapplicable.  See Transcript of July 18, 2006 Oral Argument at page 36.  Although the court finds that the Objectors final position on this matter is the correct one, a brief discussion of the issue is set forth below for the guidance of the parties.

In summary, in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), the Supreme Court held that "at least where class action status has been denied solely" because of a failure to meet the requirements of Rule 23, "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class status."  Id. at 552-553.  In Crown Cork & Seal Co. Inc. v. Parker, 462 U.S. 345 (1983), the Supreme Court held that class action tolling applies to all class members, not just interveners.  The Objectors contend that the American Pipe doctrine revives their otherwise untimely TILA/HOEPA damage

claims, if the operative complaint is the original <u>Davis</u> complaint, which for the reasons stated, above it is not.

Defendants contend that <u>American Pipe</u> tolling is not applicable in the instant case because the doctrine requires complete identity of claims. Put another way, defendants contend that because there were no TILA/HOEPA claims asserted in the original <u>Davis</u> complaint, or any other complaint filed by the Class plaintiffs, these claims are not tolled.

Prior to the transfer order of the Judicial Panel on Multidistrict Litigation, the United States District Court for the Northern District of Illinois, relying upon Justice Powell's concurrence in <u>Crown Cork & Seal</u>, agreed with defendant's argument and held that <u>American Pipe</u> tolling did not apply. <u>Spann v. Community Bank of No. Virginia</u>, 2004 WL 691785 N.D.Ill. 2004. Specifically, the court in <u>Spann</u> noted that Justice Powell observed that

> [t]he tolling rule of <u>American Pipe</u> is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following the denial of class status. In <u>American Pipe</u> we noted that a class suit 'notifies the defendants not only of the substantive claims being brought against them...' When thus notified the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that <u>American Pipe</u> is not abused by the

26

> assertion of claims that differ from those raised
> in the original class suit."

Spann at page 6. The Objectors contend that a number of courts, including the United States District Court for the Eastern District of Pennsylvania, have not required identity of claims but have rather required an identity of the factual predicates upon which the class action is premised. See In Re Linerboard Antitrust Litigation, 223 F.R.D. 335, 344-45 (E.D. Pa. 2004). The Objectors further contend that the Spann court misinterpreted American Pipe.

We conclude that, because class certification has not been denied, American Pipe does not apply to this case. The court further concludes that the reasoning, analysis and conclusion reached by the Spann court, which applied the American Pipe doctrine to a factually similar scenario, is the correct one. Accordingly, this court finds that the American Pipe doctrine does not salvage otherwise untimely TILA/HOEPA claims for damages.

B.    TILA/HOEPA Rescission Claims

1. Statute of Repose

As an initial matter, it is vital to note that the claims for rescission that the Objectors advance are not subject to a statute of limitations, but rather, are subject to a statute of repose. Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998).

27

A statute of repose is substantive; thus, when the statutory time period has passed, the cause of action is extinguished.

Accordingly, a different analysis must be applied to determine if the class has viable claims for rescission than was applied to their claim for damages. To paraphrase the Supreme Court in Beach, the question is not when, or where, or by whom, suit was commenced, but rather, whether the right of any class member to rescind his loan endures. The only date relevant to that inquiry is the date on which each class members' loan closed. Once that date is determined, we need only ascertain whether the class member requested rescission within three years. None did.

And, as noted above, unlike the one year limitation on an action for damages, the three year limitation on actions for rescission is not a statute of limitations subject to tolling, but rather it is a statute of repose, which creates a substantive right, not subject to tolling. Beach v. Ocwen Federal Bank, 523 U.S. 410, 419 (1998). The right to rescind under TILA/HOEPA, if not exercised within a three year period after a loan has closed, expires. Id.

In Beach the Supreme Court noted with respect to this distinction that

> Section 1635(f) "says nothing in terms of bringing an action but instead provides that the 'right of

> rescission [under the Act] shall expire' at the end
> of the time period.    It talks not of a suit's
> commencement but of a right's duration, which it
> addresses in terms so straightforward as to render
> any limitation on the time for seeking a remedy
> superfluous."   Id. at 417.

It is clear that, under the Supreme Court's holding in
Beach, if a class member did not seek rescission pursuant to
Section 1635(f) of TILA within three years of the date their loan
closed, then their right to rescind expired.   No member of
plaintiffs' class did; thus, there are no viable claims.

Admittedly, in In re Community Bank of Northern
Virginia, the court of appeals suggested that both actions for
damages and rescission are subject to tolling.   418 F.3d at 305.
The court of appeals referred only, however, to Section 1640(e)
and did not refer to claims for rescission under  Section 1635(f)
or to the Supreme Court's opinion in Beach, supra.   Thus, it
appears that the court of appeals intended only to state the well
established proposition that the statute of limitations set forth
in Section 1640(e) is not jurisdictional and is, therefore,
subject to tolling.   See, e.g., Ramadan, 156 F.3d 499, 505 (3d
Cir. 1998).

## 2.   Relation Back Under Rule 15(c)

As best we can determine, the only court of appeals
that has addressed the issue of whether an otherwise untimely
TILA/HOEPA claim for rescission can be revived via an amended

complaint in a published opinion after <u>Beach</u> is the Court of Appeals for the Ninth Circuit.[10] In <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161 (9th Cir. 2002), the Court of Appeals for the Ninth Circuit held that Rule 15(c) will not allow a plaintiff to relate back her otherwise untimely TILA/HOEPA rescission claim through an amended complaint seeking to add a claim for rescission. The court of appeals first noted that "[Section] 1635(f) is a statute of repose, depriving the courts of subject matter jurisdiction when a [Section] 1635 claim is brought outside the three-year limitation period." <u>Id</u>. at 1164. The court of appeals then held that plaintiff could not avoid the statute of repose by the relation back theory via Rule 15(c). Specifically, the court of appeals held that "Rule 15(c) may not be used to extend federal jurisdiction." <u>Id</u> at 1165.

The court of appeals further noted that, pursuant to 28 U.S.C. § 2702(b), the "Federal Rules of Civil Procedure may not 'abridge, enlarge or modify any substantive right.'" <u>Id</u>. The <u>Miguel</u> court also observed that the Court of Appeals for the First Circuit had reached a similar result almost thirty years

_____

[10] In an unpublished opinion, the Court of Appeals for the Fourth Circuit, relying on <u>Beach</u>, held that a TILA/HOEPA rescission claim is subject to a statute of repose and the three year time limit is "an absolute time limit beyond which liability no longer exists and is not tolled for any reason." <u>Jones v. Saxon Mortgage, Inc.</u>, 161 F.3d 2, 6 (Table, Text in Westlaw)(4th Cir. 1998)

ago in <u>USM Corp. v. GKN Fasteners Ltd.</u>, 578 F.2d 21 (1st Cir.
1978).   In <u>USM</u>, the Court of Appeals for the First Circuit held
that "Rule 15 is not to be viewed as enlarging or restricting
federal jurisdiction.   The doctrine of relation back in time to
the original pleadings does not affect the jurisdiction of the
district court here in any manner."   <u>Id</u>. at 22.

It is important to note that, under <u>Miguel</u>, if this
court adopted the argument that under Rule 15(c) an otherwise
extinguished claim for rescission could be revived, this court
would be unilaterally enlarging its jurisdiction via Rule 15(c).
This would be impermissible.   Pursuant to   Rule 82, Rule 15
"shall not be construed to extend or limit the jurisdiction of
the United States district courts."   Fed.R.Civ.P. 82.   Similarly,
as the <u>Miguel</u> court noted, the Federal Rules of Civil Procedure
may not "abridge, enlarge or modify any substantive right."
28 U.S.C. § 2702(b).

Regardless of whether the three year limitation under
Section 1635(f) is styled as jurisdictional, or as simply
creating a substantive right not subject to tolling, it is clear
that, upon the expiration of three years, the right of rescission
is extinguished and cannot be revived through any procedural
mechanism.   <u>Beach</u>, 523 U.S. at 419.

31

Finally, the Objectors argue that <u>Beach</u> merely prohibited tolling in an individual action and did not prohibit tolling in the context of a class action. The Objectors provide no basis for this argument and the court finds no basis in <u>Beach</u> to so hold. Thus, because no named plaintiff, member of the class, nor any Objector, had asserted a right of rescission within three years of the date their loan closed, it cannot be resurrected now via equitable tolling, an amended complaint, or otherwise. Accordingly, the court concludes that TILA/HOEPA claims for rescission are not "viable."[11]

## IV.  CONCLUSION

For the reasons set forth above, the court concludes: 1) as of the date of the relevant November, 2003 complaint, there

---

[11] Although we have decided this issue on the basis that any class member's right of rescission has long since expired, and cannot be procedurally resurrected via Rule 15(c), we note, parenthetically, that there is a persuasive line of cases that hold that Congress did not intend that TILA/HOEPA claims for rescission, as opposed to damages, be maintained in a class action.  <u>See</u> <u>James v. Home Construction Co. of Mobile, Inc.</u>, 621 F.2d 727, 731 (5th Cir. 1980); <u>Murry v. America's Mortgage Banc</u>, 2005 WL 1323364, *10-11 (N.D. Ill. 2005) (denying class certification of TILA rescission claim because rescission was a "purely personal remedy"); <u>Gibbons v. Interbank Funding Group</u>, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002) (same); <u>Jefferson v. Security Pac. Fin. Serv. Inc.</u>, 161 F.R.D. 63, 69 (N.D. Ill. 1995)(same); <u>See also</u> <u>Nelson v. United Credit</u>, 77 F.R.D 54 (D.C. Cir. 1978) (same).

32

were no class members who had a timely TILA/HOEPA claim for damages; 2) the <u>Hobson</u> complaint cannot relate back to any previously filed complaint; 3) each class member's right to rescind expired three years after their loans closed and cannot be revived via an amended complaint or otherwise.  Because no rescission claims were asserted within three years of closing, no class member had a timely TILA/HOEPA claim for rescission.

The court will shortly issue a scheduling order for further proceedings.

BY THE COURT:

, J.

cc:   All Counsel of Record